CECIL ODNEAL v. THE STATE.

No. 13977.   Delivered March 18, 1931.

See also 117 Texas Crim. Rep., 97, 34 S. W. (2d) 595.

The opinion states the case.

*Simpson, Collins & Moore* and *Leo Brewster,* all of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for five years.

The State relied upon circumstantial evidence to show that appellant killed A. C. Fentriss by shooting him with a pistol. Appellant, deceased, Philo Hopper and several others were having a party at Lake Worth. It appears that they were drinking whisky. Appellant and Ethel Martin were sitting in an automobile. Deceased approached the car and requested Ethel Martin to leave appellant's company. The parties had a quarrel. A difficulty ensued, in which it appears from the State's testimony that appellant and Philo Hooper attacked deceased. Deceased ran away from the car. A shot fired by someone struck deceased, resulting in his death. No witness would testify that either appellant or Philo Hooper fired the shot. A witness for appellant testified that appellant did not fire the shot which killed deceased. Appellant did not testify in his own behalf.

Appellant and Philo Hooper were charged by separate indictments with the murder of A. C. Fentriss. The cases against each of the parties were set for trial on the same date, and a special venire of 250 men had been summoned and was present in each case on the day of appellant's trial. The witnesses in the cases against the parties were the same and were also present in court. Appellant timely and properly presented a motion for severance in statutory form, asking his co-defendant, Philo Hooper, be tried first. Philo Hooper joined appellant in the motion. The granting of the severance would not have operated as a continuance, as the co-defendant Hooper was ready for trial. At a previous term of the court Philo Hooper had filed an application for severance, requesting that appellant be first placed on trial. Appellant had joined Hooper in his application. The motion being granted, the case against Hopper was continued. Both cases were then set for trial on March 24, 1930. The court appears to have overruled the application on the theory that, having severed at a former term, it was res adjudicata, and another

severance could not be had. In denying the right to sever, the court fell into error. We quote from Brooks v. State, 42 Texas Crim. Rep., 347, 60 S. W., 53, as follows:

"Upon the former trial severance was had at the request of the parties, there being three indicted, and appellant placed upon trial, and the case dismissed as to co-defendant Maggie Rose. When the case was called for trial, resulting in this conviction, another motion was made for severance, supported by an affidavit to the effect that it was believed there was not sufficient testimony against co-defendant A. B. Brooks to justify his conviction and that his testimony was wanted in case of his acquittal, for appellant on his trial. The severance was refused on the ground, that, having severed at the previous trial, it was res adjudicata, and another severance could not be had; that is, by once exercising their statutory right of severance they were thenceforth, in all subsequent trials, bound by that severance. We do not understand this to be a proper construction of the statute. The severance is granted for the trial. Upon subsequent trials the parties would have the right to change the order of trial, if in their judgment they thought it was to their interest. If the doctrine of res adjudicata would apply in this character of case, it would also apply in applications to change venue."

The doctrine laid down in Brooks v. State, supra, was expressly approved in Wallace v. State, 48 Texas Crim. Rep., 318, 87 S. W. 1041, and Young v. State, 84 Texas Crim. Rep., 232, 206 S. W., 529.

The State placed on the witness stand several witnesses who had theretofore given testimony before the grand jury touching the transaction resulting in the homicide. When called upon to testify, these witnesses gave testimony at variance with that contained in the statements they had signed when before the grand jury. Before the witness testified, the district attorney was advised that the testimony the witnesses would give would not be in harmony, with that given when they were called before the grand jury. After having given testimony at variance with their former statements, the State claimed surprise and was permitted, over timely and proper objection by appellant, to introduce the statements made before the grand jury for the purpose of impeaching the witnesses. In the state of the record the State could not urge surprise. It is the rule that the State will not be permitted to put a witness on the stand, knowing that the testimony would be adverse, in order to get in another statement which would be beneficial to the State. Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W., 316; Hollingsworth v. State, 78 Texas Crim. Rep., 489, 182 S. W., 465.

The procedure followed by the State in impeaching the wife of the codefendant by statements made before the grand jury raises a serious question. As the matter is not likely to arise on another trial, we deem it unnecessary to discuss the question.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.