Willie Charles **HUNNICUTT**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 49930.

Court of Criminal Appeals of Texas.

May 21, 1975.

Wynn G. Stanton, Dallas (Court-appointed), for appellant.

Henry Wade, Dist. Atty., James B. Scott, Hugh Lucas and Norman Kinne, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of robbery by assault. Punishment under the provisions of Article 62, Vernon's Ann.P.C., was assessed at life.

Considering the evidence in the light most favorable to the verdict, the record reflects that at about 5:30 P.M. on August 4, 1971, O. J. Kniffen closed the jewelry store in Dallas of which he was the manager and walked to his car parked in a nearby parking lot. As he unlocked his car and entered it, Joan Elizabeth Bishop raised up in the back seat, put a pistol at his head, and ordered him to drive around the block and then to park in front of the jewelry store. After he did so, he got out of the car, and she followed him with the pistol. A man, whom Kniffen recognized in court as being appellant, came up to him with a pistol and asked Bishop: "Is he cooperating?" She answered "Yes." Appellant pointed the pistol at Kniffen and had him open the store door. While appellant remained outside the store, Bishop, exhibiting her pistol, forced Kniffen to open the vault and place jewelry of the value of $191,000 in her purse. She had him lie on the floor as she left with the jewelry. The two robbers drove off in his car.

Appellant initially contends that the "Impact" district court in Dallas County in which he states this case was tried was illegally constituted and established in violation of the Texas Constitution and statutes.

■ The record reflects that this trial took place in Criminal District Court No. 5, Dallas County. Honorable Don M. Dean, Judge of the 195th Judicial District of Texas, presided under proper assignment to "any and all of the Dallas County courts which try felony cases" by the Honorable Dallas A. Blankenship, Presiding Judge, First Administrative Judicial District of Texas. See Art. 200a, Vernon's Ann.Civ. Stats. No error is shown.

■ Furthermore, in Zamora v. State, Tex.Cr.App., 508 S.W.2d 819, we expressly upheld the validity of the so-called "Impact District Courts" of Dallas County.

The first ground of error is overruled. See Crawford v. State, Tex.Cr.App., 509 S.W.2d 582; Reed v. State, Tex.Cr.App., 500 S.W.2d 137.

In his second and third grounds, appellant contends that the court erred in permitting the State to impeach its witness Joan Elizabeth Bishop.

Bishop was placed on the witness stand by the State at its case-in-chief. On direct examination, she testified that she had been tried and convicted of the robbery, and that at her trial she had admitted her guilt. Thereafter the following questions were asked by the State, and the following answers were made:

"Q Let me ask you who you were with at the time of the robbery?

"A I was alone at the time of the robbery.

"Q Who was outside the store with you at the time of the robbery?

"A No one.

"Q Who helped you plan the robbery?

"A No one.

"Q Mrs. Barber,[1] I kind of thought that you might say that. Let me ask you if you remember telling—let me go before—you're now at the Texas Department of Corrections, aren't you?

"A. Yes, I am.

"Q You were brought back to Dallas County Jail with a bench warrant from the District Attorney's office; is that right?

"A. Yes.

"Q Do you remember telling an officer by the name of J. T. Adamcek that you committed this robbery, and involved in the robbery with you was this Defendant down here, Hunnicutt?

"A I remember telling him that I committed the robbery.

"Q Did you tell the officer that you committed it and that this Defendant participated and planned the robbery, and set it all up?

"A No, I did not.

"Q So you're denying that you told Officer Adamcek that?

"A. Yes, I am.

"Q Are you denying too that this Defendant was involved in the robbery, planned it, set it up or helped execute it?

"A I am."

At the State's request, a hearing was then had in the absence of the jury. It was developed that at her trial Bishop had admitted her guilt and had stated under oath that appellant planned the robbery and participated in it as a principal. She had also made statements to police officers implicating appellant as principal offender in the robbery. The prosecuting attorney, notwithstanding his impromptu remark when the witness testified that no one had helped her in the robbery, plead surprise that the witness would testify directly contrary to her previous testimony and police statements. He stated to the court that he had never talked to the witness, but that he had bench warranted her from the penitentiary to use her as a witness in reliance on her previous testimony and statements. He placed in evidence, for the record only, a letter he had received from the witness in which she stated that appellant, in a letter to her, had stated that he would "cop" out for a five year sentence with credit for jail time. He argued that he had the legal right to impeach her because of the injurious testimony she had given in contradiction to her previous statements.

The court overruled appellant's objections duly made, and permitted questions to be asked the witness of her previous statements implicating appellant, to all of which she answered that she had made no such statements, and permitted the State to introduce evidence of her previous testimony and statements to officers. This evidence was properly limited to purposes of impeachment in the charge to the jury.

1. She was referred to by the name of Bishop and also Barber.

■ As we stated in Williams v. State, Tex.Cr.App., 521 S.W.2d 250:

"A party may not impeach his own witness unless the witness testifies to facts injurious to that party's case and the party demonstrates that he was surprised by such testimony. Banks v. State, Tex. Cr.App., 510 S.W.2d 592; Zanders v. State, Tex.Cr.App., 480 S.W.2d 708; Smith v. State, Tex.Cr.App., 479 S.W.2d 311; Wall v. State, Tex.Cr.App., 417 S.W.2d 59.

"To demonstrate surprise, the prosecutor must show prior conversations with the witness or prior statements, outside the presence of the jury. Norwood v. State, Tex.Cr.App., 486 S.W.2d 776; Perry v. State, Tex.Cr.App., 464 S.W.2d 660; Thrash v. State, 170 Tex.Cr.R. 97, 338 S.W.2d 447; Pelton v. State, 167 Tex. Cr.R. 649, 322 S.W.2d 529. The reason for the requirement of surprise is to prevent a party from calling a witness who the party knows will testify adversely, and then, under the guise of impeachment, adduce the testimony which the party would have hoped to elicit from the adverse witness. Cherb v. State, Tex. Cr.App., 472 S.W.2d 273."

■ The testimony of the witness that she was acting alone at the time of the robbery, and in which she denied that appellant participated or was in any way involved, was injurious to the State's case. The State was entitled to rely upon her testimony at the instant trial being consistent with her previous testimony and statements. Floyd v. State, 117 Tex.Cr.R. 384, 36 S.W.2d 739. It was not necessary that the prosecuting attorney talk with the witness before placing her on the stand. McLain v. State, Tex.Cr. App., 383 S.W.2d 407, 414.

■■ It was within the sound discretion of the court, subject to review on appeal for abuse, to determine whether a proper predicate of surprise and injury had been laid. Notwithstanding the statement of the prosecuting attorney that "I kind of thought that

you might say that" made when the witness testified that no one had helped her plan the robbery, the proceedings at the hearing before the court reflect that he actually was surprised at her testimony in conflict with and contradicting her prior statements. We conclude that a proper predicate was shown, and that the court did not err in admitting the impeaching evidence. Article 38.28, V.A.C.C.P.; Pelton v. State, 167 Tex.Cr.R. 649, 322 S.W.2d 529; McLain v. State, supra; Perry v. State, Tex. Cr.App., 464 S.W.2d 660, cert. den., 404 U.S. 953, 92 S.Ct. 324, 30 L.Ed.2d 270. See Brown v. State, 523 S.W.2d 238 (Tex.Cr. App.1975).

In his fourth ground, appellant contends that the evidence was insufficient to identify him as one of the robbers.

■ The complainant Kniffen on direct examination testified that the man in question came within ten feet of him as he got out of his car at the store about 5:40 P.M. on an August day and, in answer to questions on direct examination, he said:

"Q  At this point, were you looking at the man, were you able to look at him?

"A  I was looking straight at him. When I got out of the car, I was faced that away and, of course, I looked at him.

"Q  Mr. Kniffen, let me ask you this if you see that man here in the courtroom today?

"A  Yes, that is the gentleman over there.

"Q  Seated at the end of the counsel table; is that correct?

"A  Yes, Sir.

"MR. LUCAS: Let the record reflect that the witness dentified the Defendant before the jury.

"THE COURT: It may so reflect."

On cross-examination, he testified that he was "positive" appellant was the man.

The fourth ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, J., concurs in result.